Not for Publication                                         (Docket Entry No. 22)

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

_____
                                                  :
MULTI-GLASS ATLANTIC, INC.,            :
                                                  :
                    Plaintiff,                   :          Civil No. 07-4760 (RBK)
                                                  :
          v.                                      :          **OPINION**
                                                  :
ALNOR ASSOCIATES, LLC, et al.,        :
                                                  :
                    Defendants.               :
_____  :

**KUGLER**, United States District Judge:

        This matter comes before the Court on the motion of Plaintiff Multi-Glass Atlantic, Inc.

("Plaintiff" or "Multi-Glass") for entry of default judgment against Defendant Alnor Associates,

LLC ("Defendant Alnor").  For the reasons that follow, Plaintiff's motion will be denied.

**I.      BACKGROUND**

        This case arises out of the lengthy attempts by Multi-Glass's corporate predecessor,

Guildfords (2000), Inc. to collect payment for work it performed in 2004.  The Court reviews the

facts as alleged in the Amended Complaint and the certifications of counsel.  On February 12,

2004, Guildfords was hired by Reed March, an agent for a company called Thermacon Industries,

Inc., to provide services in connection with the installation of a butane tank at the Come-by-

Chance Refinery near Whiffen Head, Newfoundland and Labrador, Canada.  Guildfords began

this work on May 17, 2004 and completed the work by the end of July, 2004.  Regular invoices

were sent to Thermacon, with the final invoice sent on August 11, 2004.

Thermacon never paid Guildfords, and Guildfords filed suit against Thermacon in this District on November 8, 2004.  Guildfords (2000), Inc. v. Thermacon Industries, Inc., Civ. No. 04-5610.  Default judgment was entered against Thermacon on January 27, 2005, in the amount of $734,888.73 in Canadian dollars.

In the meantime, however, Thermacon had allegedly transferred all its assets through an Asset Purchase Agreement to a company known as Reelan.  (Compl. Ex. A.)  The Asset Purchase Agreement was signed by multiple sellers, including Thermacon and Defendant Alnor Associates, LLC, and buyer Reelan on September 13, 2004.[1]  The effective date of the agreement was allegedly backdated to February 28, 2004, which was before Thermacon hired Guildfords for the work at issue.  The Agreement transferred substantially all of Thermacon's assets to Reelan. Reed March, Alan Dinow, and Norman Hinerfeld, who had been officers of Thermacon, became officers of Reelan.  A company known as RJTL, Inc. received an assignment of secured debt from on of Thermacon's secured creditors prior to the execution of the Agreement, and upon execution of the Agreement RJTL received approximately $750,000 and interest in Reelan.  No payments were made to Thermacon's creditors.

After learning of this transfer of assets, Guildfords filed another suit, alleging that Reelan had assumed Thermacon's liability for the unpaid debt.  Guildfords (2000), Inc. v. Reelan Industries, Inc., Civ. No. 05-3926.  The parties entered into a settlement agreement on November 18, 2005, upon which Reelan defaulted, and a judgment of $675,583.01 Canadian

_____

[1]According to the Amended Complaint, Alnor is a limited liability company.  Its members are allegedly Alan Dinow and Norman Hinerfeld, and its offices are located at 345-351 New Albany Road, in Moorestown, New Jersey.

2

dollars was entered against Reelan in favor of Guildfords.

During this time, Alnor owned a property at 345-351 New Albany Road, Moorestown, NJ. This property was subject to a mortgage held by Univest National Bank and Trust Company. Alnor also owed Thermacon approximately $350,000 at the time of the Asset Purchase Agreement, which was secured by a second mortgage on the property. In connection with the Asset Purchase Agreement, Alnor agreed to transfer the property to Reelan subject to the first mortgage, while Thermacon's mortgage would be discharged.

Alnor never transferred title of the property to Reelan, and Plaintiff alleges the members of Alnor eventually received approximately $1,350,000 in loans secured by the property. None of these loans were used to repay Thermacon's or Reelan's creditors. Plaintiff asserts that these actions took place within one month of the November 18, 2005 settlement agreement in order to shield Reelan's assets from creditors.

Reelan and Thermacon are now both out of business and have no assets. Guildfords, now Multi-Glass, alleges that the failure to transfer title of the property to Reelan and the removal of the equity from the property through the additional loans secured by the property effectively has removed Reelan's assets from the reach of creditors. The property is now in foreclosure.

Plaintiff Multi-Glass filed a third suit against many defendants, including Alnor, on October 2, 2007. The complaint alleges fraudulent conveyance, breach of fiduciary duty, conspiracy to engage in a fraudulent transfer, and aiding and abetting a fraudulent transfer.

Alnor has an address in Moorestown, NJ, and Alan Dinow is the listed agent for service of process for Alnor. Multi-Glass hired Guaranteed Subpoena Services, Inc. to serve all the defendants. When Guaranteed servers twice attempted to serve Dinow at his address at 55 Eagle

Chase, Woodbury, NY, they were unsuccessful because the security guard at Dinow's gated community refused entry.  When Guaranteed attempted to serve Alnor at its Moorestown office, the servers discovered that 345-351 New Albany Road is a vacant and boarded up building.

Guaranteed eventually served process on Alnor in two ways.  First, Guaranteed served Norman Hinerfeld at his home at 11 Oak Lane, Larchmont, NY, on October 17, 2007.  Hinerfeld is allegedly a member of Alnor, though he denied this in his answer.  Second, the summons and amended complaint were sent by First Class and Certified Mail to Dinow's residence, and the certified receipts confirming delivery were returned completed on November 9, 2007.

Alnor never filed an answer, and no attorney entered an appearance on behalf of Alnor. On December 4, 2007, Plaintiff requested entry of default, and the Clerk entered default against Alnor on December 5, 2007.  (See Docket Entry No. 19.)  On January 11, 2008, Plaintiff moved for entry of default judgment.  Alnor has not responded or defended itself in any way.  Plaintiff seeks judgment in the amount of $723,299.53 Canadian dollars and $32,485.71 US dollars, which represents the amount of the judgment owed by Reelan, as well as attorneys' fees, costs, and interest.  .

## II.   STANDARD

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to plead or otherwise defend an action.  Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev., 922 F.2d 168, 177 n.9 (3d Cir. 1990) ("When a defendant fails to appear . . . , the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is

not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits whenever practicable." Hritz v. Woma Corp., 732 F.2d 1178, 1181 (3d Cir. 1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages.  Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990); Directv, Inc. v. Asher, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing Charles A. Wright, Arthur R. Miller & Mary Kay Kane, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed. 1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." Asher, 2006 WL 680533, at *1 (citing Wright, Miller, & Kane, § 2688, at 63).  If Plaintiff has stated a claim on which a default judgment may be entered, the Court will examine the factors set out by the Third Circuit in Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 73 (3rd Cir. 1987) to determine if default is appropriate.  The applicable factors are: (1) whether denying the default would prejudice the plaintiff; (2) whether the defendant has a prima facie meritorious defense; (3) whether the defaulting defendant's conduct is excusable or culpable; and (4) the effectiveness of alternative sanctions.  Id.

## III.    CAUSES OF ACTION

Plaintiff alleges four claims in the Amended Complaint:  fraudulent conveyance, breach of fiduciary duty, conspiracy to engage in a fraudulent transfer, and aiding and abetting a fraudulent transfer.

New Jersey has adopted the Uniform Fraudulent Transfer Act, N.J.S.A. § 25:2-20 et seq.,

which is designed to prevent debtors from placing their property beyond a creditor's reach.
Gilchinsky v. National Westminster Bank N.J., 732 A.2d 482, 488 (N.J. 1999).  The statute
declares transfers are fraudulent if they are made with the actual intent to defraud any creditor, or
if the debtor does not receive a reasonably equivalent value in exchange for the transfer and the
debtor was insolvent or became insolvent as a result of the transfer.  N.J.S.A. §§ 25:2-25, 25:2-
27.  The Court looks for indicia of fraud to evaluate whether a transfer is fraudulent.  See
N.J.S.A. § 25:2-26 (including factors such as transfer to an insider, control of property retained
by debtor after transfer, transfer of all or substantially all of debtor's assets, and removal or
concealment of assets).

Plaintiff's main allegation against Alnor is that Alnor, in contravention of the Asset
Purchase Agreement, refused to transfer title of the property to Reelan, with the goal of
preventing it from being dispersed to Reelan's creditors.  Plaintiff alleges that Alnor then
permitted its members Hinerfeld and Dinow to remove equity from property through loans
secured by the property.  Alnor has not appeared to contest these facts, and so the Court accepts
them as true.

However, taking these facts as true, Plaintiff's Complaint does not state a legitimate
cause of action against Alnor.  The problem is that Plaintiff's allegations are not about a
conveyance but about a failure to convey.  The statute prohibits fraudulent conveyances, not
promises to convey that aren't materialized.  The central inquiry in the context of a fraudulent
transfer is whether the debtor has put some asset beyond the reach of creditors which would have
been available to them but for the conveyance.  Gilchinsky, 732 A.2d at 488.  Alnor's property
would not have been available to Plaintiff in the absence of the Asset Purchase Agreement;

6

Plaintiff had no previous claims against Alnor and is not a creditor of Alnor.  Reelan is the debtor here, and Reelan does not appear to have either "made [a] transfer" or "incurred [an] obligation" relating to assets that would have previously been available to Plaintiff.  N.J.S.A. § 25:2-27(a); see also SEC v. Antar, 120 F. Supp. 2d 431, 443 (D.N.J. 2000) (noting that to prevail on fraudulent transfer claim, plaintiff needed to prove that its claim arose before the transfers were made, that debtor made the transfers without receiving reasonably equivalent value, and that debtor was insolvent or became insolvent as a result of the transfers).

While it appears from the Complaint that Reelan allegedly transferred value to other parties, who are all defendants in this case, the Court cannot discern what, if anything, Reelan transferred to Alnor.  The Complaint does not include any allegations that Reelan transferred any assets to Alnor in return for this incomplete property transaction, and the Court cannot determine, from the Asset Purchase Agreement, whether such a transfer from Reelan to Alnor was contemplated.  Because Plaintiff has not stated that Alnor put assets which would have been previously available to it beyond its reach, Plaintiff has not stated a cause of action against Alnor for fraudulent conveyance, conspiracy to engage in a fraudulent transfer, or aiding and abetting a fraudulent transfer.

Similarly, Plaintiff cannot state a claim for breach of fiduciary duty against Alnor, because Alnor did not owe Plaintiff any fiduciary duty.  The existence of a duty is a legal question, and the Court does not accept Plaintiff's allegation in the Complaint that it was owed a fiduciary duty as a creditor of Reelan.  Wang v. Allstate Ins. Co., 595 A.2d 527, 534 (N.J. 1991).  Plaintiff appears to have had no dealings with Alnor, and Alnor's only involvement is through the Asset Purchase Agreement, to which Plaintiff was not a party.  Even if the Court found that

7

Plaintiff had a relationship with Alnor in some way, under New Jersey law, a fiduciary relationship generally does not arise in the debtor/creditor context. See, e.g., DiCarlo v. St. Mary Hosp., 530 F.3d 255, 269 (3d Cir. 2008); New Jersey Econ. Dev. Auth. v. Pavonia Rest., 725 A.3d 1133, 1139 (N.J. Super. Ct. App. Div. 1998), Globe Motor Car Co. v. First Fidelity Bank, N.A., 641 A.2d 1136, 1138-39 (N.J Super. Ct. Law Div. 1993). Alnor did not owe Plaintiff a fiduciary duty, and so Plaintiff cannot state a cause of action for breach of that duty.

Alnor's failure to transfer the property to Reelan can be more properly characterized as a breach of contract, because Alnor promised, in the Asset Purchase Agreement, to effectuate this transfer. The certification of Plaintiff's attorney Darren Barreiro in support of Plaintiff's motion contends, "Had Alnor transferred the Property to Reelan as required under the Asset Purchase Agreement rather than taking out most or all of the equity in the Property, Reelan would have had the means to satisfy Plaintiff's judgment from said equity." (Barreiro Cert. ¶ 21.) However, Plaintiff was not a party to that Agreement. Nor was Plaintiff an intended third-party beneficiary; though Plaintiff would have received some benefit if the performance of the Agreement had made available assets to be paid to Plaintiff as a creditor of Reelan, the agreement was not created with that intent. See Broadway Main. Corp. v. Rutgers, State Univ., 447 A.2d 906, 909 (N.J. 1982) (holding that third-party beneficiary status is determined by whether the parties intended the third-party to benefit or whether the benefit to third-party was merely incidental). Alnor did not promise to take over Reelan's liabilities and did not promise to take over the judgment Reelan owes to Plaintiff. Plaintiff cannot enforce the parties' obligations under the Asset Purchase Agreement.

**IV.     CONCLUSION**

The Court is not satisfied that Plaintiff has stated a legitimate claim against Alnor on any of the four counts in the Complaint and will not reach the <u>Emcasco</u> factors.  The Court denies Plaintiffs' motion for entry of default judgment against Defendant Alnor.  An accompanying order will issue today.


Dated:   8/12/2008                                          /s/ Robert B. Kugler
                                                                       ROBERT B. KUGLER
                                                                       United States District Judge